IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID LUGINBUHL,

    Plaintiff,

vs.                               Civ. No. 12-1199 JP/WDS

CITY OF GALLUP; ROBERT H. CRON, JR.;
JOHN STEW ALLEN; ROSANNE MORRISETTE;
JOHN DOES 1-3; ELEVENTH JUDICIAL DISTRICT
ATTORNEY'S OFFICE, DIVISION II; KARL R. GILLSON;
JAMES E. BIERLY; and JOHN DOES 4-5,

    Defendants,

MEMORANDUM OPINION AND ORDER SETTING ASIDE DEFAULT JUDGMENT

On March 20, 2013, the Court held a hearing on DEFENDANTS KARL R. GILLSON AND ELEVENTH JUDICIAL DISTRICT ATTORNEY'S OFFICE'S MOTION TO SET ASIDE DEFAULT JUDGMENT (Doc. No. 23) (Motion to Set Aside Default Judgment), filed February 27, 2013. Plaintiff and his attorney Rosario Vega Lynn, were present at the hearing. Attorney Ann Maggiore represented Defendants Karl R. Gillson and the Eleventh Judicial District Attorney's Office, Division II (DA's Office) while Attorney Lynn Isaacson represented Defendants City of Gallup, Robert H. Cron, Jr.; John Stew Allen; and Rosanne Morrisette. The Court notes that Defendant James E. Bierly committed suicide on December 27, 2012. *See* SUGGESTION OF DEATH (Doc. No. 15), filed Jan. 18, 2013. No personal representative had been appointed for Bierly's estate as of the date of the SUGGESTION OF DEATH and Bierly died before he could be served.

The Court determined at the March 20, 2013 hearing to grant the Motion to Set Aside Default Judgment on the condition that Gillson and the DA's Office pay Plaintiff the following:

(1) reasonable attorney's fees and costs incurred in filing the MOTION FOR DEFAULT JUDGMENT (Doc. No. 17) and in contesting the Motion to Set Aside Default Judgment; and (2) reasonable mileage and lost wages to compensate Plaintiff for traveling to Albuquerque to attend the March 20, 2013 hearing.  The Court instructed Ms. Vega Lynn to email chambers and opposing counsel an itemization of the above expenses by noon on March 21, 2013, and allowed Ms. Maggiore until noon on March 22, 2013 to respond to that itemization if Ms Maggiore objected to the itemization.

This MEMORANDUM OPINION AND ORDER SETTING ASIDE DEFAULT JUDGMENT explains the Court's decision to grant the Motion to Set Aside Default Judgment on condition of paying Plaintiff's expenses.  The Court has considered the briefs, argument from counsel at the March 20, 2013 hearing, and the March 21, 2013 email from Ms. Vega Lynn.  Ms. Maggiore did not respond to Ms. Vega Lynn's email.

**A. Background**

       **1. Factual Allegations Relevant to the Claims Against Gillson and the DA's Office**

The alleged events which form the basis of this lawsuit occurred while Plaintiff worked for the Gallup Police Department (GPD) as a police officer and concerned the Eleventh Judicial District Attorney's Office, Division II (DA's Office).  Plaintiff sued Cron (GPD Chief of Police); Allen (GPD Deputy Chief of Police); and Morrisette (GPD police officer).  Plaintiff also sued Gillson (the District Attorney (DA) at the DA's Office); the DA's Office; and Bierly (Chief Deputy DA under Gillson). In addition, Plaintiff sued several John Does.

On May 17, 2011, Plaintiff got into a brief verbal argument with his girlfriend, Kristin Sanderson, an Assistant DA under Gillson, during the lunch hour while at Sanderson's home.  Sanderson was taking a break from work and Plaintiff was off-duty that day.  Sanderson

informed Bierly about the disagreement when she returned to work. Plaintiff asserts that Bierly ordered Sanderson to call Plaintiff on her cell phone and that Bierly listened in on the conversation. Plaintiff also asserts that Bierly arranged a meeting with Gillson, Sanderson, and Richard Malone, an investigator for the DA's Office. Plaintiff alleges that during the meeting Bierly and Gillson ordered Malone to escort Sanderson home against her wishes. Sanderson apparently did not feel threatened by Plaintiff.

Plaintiff contends that Malone then spoke to Morrisette to arrange the escort for Sanderson, contrary to a GPD Standard Operating Procedure (SOP). After Sanderson returned home, Plaintiff happened to be in Sanderson's neighborhood to visit a friend. Morrisette and GPD Officer Norman Bowman were outside of Sanderson's home when Plaintiff walked by the home on his way to his friend's house. Morrisette and Bowman allegedly detained Plaintiff and ordered him to stand by Bowman's police unit. According to Plaintiff, he was standing there for several hours and no one advised him of his Miranda rights. Plaintiff further alleges that while detained outside, GPD personnel repeatedly questioned him and that no one spoke with Plaintiff's friend to confirm Plaintiff' reason for being in the neighborhood.

Plaintiff also alleges that Morrisette, at some point, called the acting supervisor for guidance on the situation. The acting supervisor allegedly contacted Allen for advice and Allen advised that the matter be handled by GPD, not by the State Police, contrary to custom and a GPD SOP. Plaintiff contends that while he was detained outside next to the police unit, Gillson drove by the police unit a couple of times; Gillson did not live in that neighborhood.

According to Plaintiff, the acting supervisor, based on representations by Bierly, decided to arrest Plaintiff for assault and property damage. Plaintiff alleges that Bierly prepared the criminal complaint and probable cause statement for Morrisette's signature. In addition, Gillson

allegedly told Bierly to include extortion in the criminal complaint.  Plaintiff was also charged with attempted false imprisonment and criminal trespass.  Plaintiff maintains that when Bowman transported Plaintiff to the jail, he was left in a room for several hours where he was clearly visible to anyone entering the booking area.

Plaintiff further maintains that on May 17, 2011, Cron initiated an internal affairs complaint against Plaintiff for violation of the code of conduct.  Curiously, Plaintiff alleges that the conduct complained of in the internal affairs complaint was committed just a few hours prior to when Plaintiff was booked into custody.  Cron placed Plaintiff on administrative leave the next day.  Plaintiff also contends that on May 18, 2011, Bierly contacted local newspapers about Plaintiff's arrest and that those newspapers published stories on the arrest including a mugshot of Plaintiff.

Plaintiff alleges that after his arrest Gillson ordered Sanderson to seek a restraining order against Plaintiff.  On May 26, 2011, the state district court heard the matter and did not find that domestic violence occurred, but, nonetheless, entered an Order of Protection.  Plaintiff maintains that the local news media covered the state court hearing on the issue of the restraining order.  According to Plaintiff, the state district court later reversed its ruling based on the New Mexico Family Violence Protection Act.

On May 31, 2011, Plaintiff sent a New Mexico Tort Claims Act notice to the GPD and the DA's Office.  Gillson then transferred the matter to the DA's Office in Farmington.  Then, on November 11, 2011, the Farmington DA's Office filed a *nolle prosequi* on the charges against Plaintiff.

2. **Complaint for Deprivation of Civil Rights, Violations of the New Mexico Tort Claims Act, and Retaliation in Violation of the New Mexico Human Rights Act (Doc. No.1) (Complaint), filed Nov. 19, 2012**

In Count I of the Complaint, Plaintiff brings 42 U.S.C. § 1983 claims against the Defendants for false arrest and malicious prosecution.  Ms. Vega Lynn confirmed at the March 20, 2013 hearing that Plaintiff is bringing only malicious prosecution claims against Gillson and the DA's Office.  In Count II, Plaintiff brings claims against the City of Gallup, Cron, Allen, Morrisette, and John Does 1-3 under the New Mexico Tort Claims Act.  In Count III, Plaintiff brings state libel, slander, and defamation of character claims against Bierly.  Finally, in Count IV, Plaintiff brings retaliation claims under the New Mexico Human Rights Act against City of Gallup, Cron, and Allen.

3. **Chronology of Events Related to the Default Judgment Against Gillson and the DA's Office**

Gillson and the DA's Office were served with process on January 12, 2013.  *See* Doc. Nos. 13 and 14.  Answers for Gillson and the DA's Office were due on February 4, 2013. In the Motion to Set Aside Default, Gillson and the DA's Office provide emails which show that Gillson sent the Complaint and summons to the Risk Management Division on January 31, 2013. Ex. A (attached to Motion to Set Aside Default Judgment).  The Risk Management Division did not file an answer by February 4, 2013, so Plaintiff filed a MOTION FOR DEFAULT JUDGMENT (Doc. No. 17) on February 13, 2013.  The Clerk of the Clerk entered defaults on February 14, 2013 (Doc. Nos. 18 and 19) as to both Gillson and the DA's Office.  The Court entered a DEFAULT JUDGMENT (Doc. No. 20) (default judgment) as to liability on February 26, 2013.  The day before the Court entered the default judgment, February 25, 2013, the Risk

Management Division assigned counsel to the case.  Motion to Set Aside Default Judgment at 2.  Gillson and the DA's Office filed the Motion to Set Aside Default Judgment on February 27, 2013.  Gillson and the DA's Office attached a proposed answer (Ex. B) to the Motion to Set Aside Default Judgment.

**B. Discussion**

    **1. Fed. R. Civ. P. 55(c) and 60(b)**

Fed. R. Civ. P. 55(c) states that the Court "may set aside a default judgment under Rule 60(b)."  Gillson and the DA's Office contend that Rule 60(b)(1) provides for relief from the default judgment.  Rule 60(b)(1) states that relief from a final judgment is appropriate if there is "mistake, inadvertence, surprise, or excusable neglect."  Moreover, Rule 60(b)(6) provides for relief from a final judgment for "any other reason that justifies relief."

"The burden is upon the party moving to have the judgment set aside" but the court resolves all doubts in favor of the movant. *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990); *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir. 1983).  "To set aside a default judgment under Rule 60(b), the moving party must show that its 'culpable conduct did not cause the default,' that it 'has a meritorious defense,' and that 'the non-moving party will not be prejudiced by setting aside the judgment.'" *Zimmerling v. Affinity Financial Corp.*, 478 Fed. Appx. 505, 508 (10th Cir. 2012) (unpublished decision) (quoting *United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993)).  The movant is considered culpable if it "defaulted willfully or has no excuse for the default." *Id.* (internal quotations and citation omitted).  In addition, the movant "cannot rely on conclusory statements" in demonstrating that there is a meritorious defense. *Barta v. Long*, 670 F.2d 907, 909 (10th Cir. 1982).  The Court examines "the legal sufficiency of the [factual] allegations

made in the moving papers rather than their truth" in determining if the movant's defense would be meritorious. *In re Stone*, 588 F.2d 1316, 1319-20 (10th Cir. 1978).

### a. Rule 60(b)(1)

#### (1) Excusable Neglect

Gillson and the DA's Office argue that the fact Gillson waited until January 31, 2013, 19 days after having been served the Complaint and summons on January 12, 2013, to email the Complaint and summons to the Risk Management Division constitutes excusable neglect. After Bierly committed suicide on December 27, 2012, under apparently violent and disturbing circumstances, the DA's Office, including Gillson, Bierly's friend, was in a state of chaos and turmoil. Resolving all doubts in favor of Gillson and the DA's Office, it is reasonable and understandable that Gillson would not email the Complaint and summons to the Risk Management Division until late in January 2013. The Court concludes that Gillson's action constituted excusable neglect and was not culpable conduct.

#### (2) Mistake or Inadvertence

Next, Gillson and the DA's Office contend that the Risk Management Division, through either mistake or inadvertence, did not assign counsel to the case until February 25, 2013, well after an answer was due. There is no indication that the Risk Management Division's action was willful and, in fact, the two days after the Risk Management Division assigned counsel to the case, counsel filed the Motion to Set Aside Default Judgment and attached a proposed answer. Resolving all doubts in favor of Gillson and the DA's Office, the Court finds that Risk Management's actions were caused by mistake or inadvertence.

#### (3) Meritorious Defenses

Gillson and the DA's Office also argue that they have meritorious defenses against the

§ 1983 malicious prosecution claims.  Gillson and the DA's Office argue first that the DA's Office, as a state agency, is immune from suit under the Eleventh Amendment.  Ms. Vega Lynn seemed to agree with this argument at the March 20, 2013 hearing.  With two narrow exceptions, the Eleventh Amendment bars a lawsuit in federal court by a citizen against a state agency. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *cert. denied*, 525 U.S. 1122 (1999)(citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The two narrow exceptions to Eleventh Amendment sovereign immunity are as follows: "1) A state may waive its Eleventh Amendment immunity by consenting to be sued, but only in the clearest and most unmistakable terms, and 2) Congress may abrogate the states' Eleventh Amendment immunity, but again, only by using the clearest and most unmistakable terms, and only when Congress is exercising a power granted to it by a constitutional amendment post-dating the Eleventh Amendment, i.e., principally section 5 of the Fourteenth Amendment." *Id.* at 1187-88 (citing *Aaron v. State of Kan.*, 115 F.3d 813, 814 (10th Cir. 1997)). Moreover, the Eleventh Amendment can bar lawsuits against a state agency no matter what relief the citizen seeks. *Id.* at 1187 (citing *Cory v. White*, 457 U.S. 85, 90 (1982)). In this case, there is no indication that the DA's Office has consented to be sued let alone that there was clear and unmistakable consent to suit. There is also no indication that Congress in any terms abrogated the DA's Office's Eleventh Amendment sovereign immunity. The Eleventh Amendment immunity defense is certainly a meritorious one.

   Next, Gillson and the DA's Office argue that § 1983 does not apply to the DA's Office because it is not a "person."  To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law."

*West v. Atkins,* 487 U.S. 42, 48 (1988) (emphasis added). States and their agencies are not considered "persons" under § 1983 when compensatory damages are sought. *See, e.g., Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 2010). This defense is, likewise, meritorious.

Finally, Gillson and the DA's Office contend that Gillson is protected from suit under § 1983 by absolute prosecutorial immunity. State officials are entitled to absolute immunity if they "'perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings.'" *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991)). Absolute immunity does not extend to primarily investigative or administrative actions unless those actions must be performed by a prosecutor in fulfilling his duty as an officer of the court. *Id*. (quoting *Pfeiffer*, 929 F.2d at 1490). In deciding whether a particular act of a government official is entitled to absolute immunity, the courts apply a functional approach which examines the nature of the government official's action. *Malik v. Arapahoe County Dept. of Social Services*, 191 F.3d 1306, 1314 (10th Cir. 1999) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v.Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990). In the Tenth Circuit, a state official may enjoy only qualified immunity if the state official's actions were unilateral and occurred before the judicial process could begin. *Id*. at 688-89 (citing *Spielman v. Hildebrand*, 873 F.2d 1377, 1383 (10th Cir. 1989)). In other words, if the state official acts more like a law enforcement officer who investigates a situation and has a duty to intervene to prevent an injury, then the state official is not entitled to absolute immunity and may enjoy only qualified immunity. *Id.* at 689 (quoting *Hodorowski v. Ray*, 844 F.2d 1210, 1214 (5th Cir. 1988)). The

state official has the burden of showing that absolute immunity should apply. *Id*. at 696 (quoting *Forrester v. White*, 484 U.S. 219, 223 (1988)). Plaintiff asserts that there is a factual issue as to whether Gillson was acting in the capacity of a prosecutor or as a friend to the parties involved in the alleged malicious prosecution. Nonetheless, when the Court resolves all doubts in favor of Gillson and the DA's Office, the Court concludes that the absolute immunity defense is a meritorious defense, i.e., it is not frivolous or necessarily unsupported by the alleged facts in the Complaint.

### (4) Prejudice to Plaintiff

Finally, setting aside the default judgment will not prejudice the Plaintiff. This lawsuit is still in its early stages. Although the other Defendants have filed answers, discovery has not yet begun and the parties have not yet met with the Magistrate Judge to discuss pretrial deadlines. Moreover, Plaintiff has not yet decided how to proceed with his claims against Bierly. Once again, resolving all doubt in favor of Gillson and the DA's Office, the Court determines that Plaintiff will not be prejudiced if the default judgment is set aside.

### b. Rule 60(b)(6): Other Reasons Justifying Relief

The Court further concludes that Rule 60(b)(6) supports its decision to set aside the default judgment with respect to Gillson's actions. "[A] district court may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when necessary to accomplish justice." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996)(citing *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 729 (10th Cir. 1993)). "Relief under Rule 60(b)(6) is appropriate when circumstances are so 'unusual or compelling' that extraordinary relief is warranted, or when it 'offends justice' to deny such relief." *Id*. at 580 (citing *Pelican Production Corp.*, 893 F.2d at 1147). An extraordinary circumstance justifying Rule 60(b)(6) relief, for example, exists

"when, after entry of judgment, events not contemplated by the moving party render enforcement of the judgment inequitable." *Id.* at 579 (citations omitted).  The Court has already determined that Gillson's conduct was not culpable, that Gillson has a meritorious defense, and that setting aside the default judgment will not prejudice Plaintiff.  The Court also concludes, resolving all doubts in favor of Gillson and the DA's Office, that the circumstances and timing of Bierly's suicide were so exceptionally unusual and disruptive to the DA's Office and to Gillson, that it would offend justice to deny the Motion to Set Aside Default Judgment based on Gillson's actions.

### 3. Conditions

The Court has the authority to impose reasonable conditions for setting aside a default judgment.  *See, e.g., Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472 *23 (N.D. Cal.) (citing *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir. 1988)).  The most common condition is for the movant to reimburse the plaintiff for expenses incurred as a result of the default judgment.  *Id.*  Having considered Ms. Vega Lynn's March 21, 2013 email, the Court determines that it is appropriate in this case to award Plaintiff the following reasonable expenses he incurred because of the default judgment:  (1) $2,503.80 in attorney's fees and costs incurred in filing the MOTION FOR DEFAULT JUDGMENT (Doc. No. 17) and in contesting the Motion to Set Aside Default Judgment; and (2) $331.12 for mileage and lost wages to compensate Plaintiff for traveling to Albuquerque to attend the March 20, 2013 hearing. The Court also notes that in her March 21, 2013 email Ms. Vega Lynn seeks $668.75 for the cost of an economist's report prepared in anticipation of arguing the issue of damages in the event the default judgment was not set aside.  Ms. Maggiore did not oppose this additional cost and this cost is otherwise reasonable, so the Court will award

11

$668.75 to Plaintiff for the cost of the economist's report. Gillson and the DA's Office will pay Plaintiff a total of $3,503.67 by April 1, 2013 as a condition of setting aside the default judgment.

 IT IS ORDERED that:

 1. DEFENDANTS KARL R. GILLSON AND ELEVENTH JUDICIAL DISTRICT ATTORNEY'S OFFICE'S MOTION TO SET ASIDE DEFAULT JUDGMENT (Doc. No. 23) is granted;

 2. the DEFAULT JUDGMENT (Doc. No. 20) is set aside; and

 3. Gillson and DA's Office must pay Plaintiff a total of $3,503.67 by April 1, 2013 as a condition for granting the DEFENDANTS KARL R. GILLSON AND ELEVENTH JUDICIAL DISTRICT ATTORNEY'S OFFICE'S MOTION TO SET ASIDE DEFAULT JUDGMENT (Doc. No. 23).

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE