IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID LUGINBUHL,

    Plaintiff,

vs.                                                         No. 1:12-CV-01199 KG/SMV

CITY OF GALLUP; ROBERT H. CRON, JR.;
JOHN STEW ALLEN; ROSANNE MORRISSETTE;
JOHN DOES 1-3; ELEVENTH JUDICIAL DISTRICT
ATTORNEY'S OFFICE, DIVISION II; KARL L. GILLSON;
GLENN BIERLY, as Personal Representative of the Estate of
JAMES E. BIERLY; and JOHN DOES 4-5,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed on November 11, 2013, by the Eleventh Judicial District Attorney's Office, Division II; Karl R. Gillson, District Attorney for the Eleventh Judicial District Attorney's Office, Division II; and Glenn Bierly, as personal representative of the Estate of James E. Bierly, former Chief Deputy District Attorney for the Eleventh Judicial District Attorney's Office, Division II (collectively, "State Defendants"). (Doc. 94). Plaintiff David Luginbuhl filed a response on November 26, 2013, (Doc. 105), and State Defendants filed a reply on December 11, 2013, (Doc. 110).

On December 22, 2015, the Court dismissed all claims against Bierly in a prior Memorandum Opinion and Order. (Doc. 133). The Court, therefore, omits any arguments relating to Bierly from the present Memorandum Opinion and Order. Luginbuhl's claims against the remaining State Defendants include 42 U.S.C. § 1983 claims for false arrest and malicious

prosecution. State Defendants first contend that the Eleventh Amendment to the United States Constitution bars suit against the District Attorney's Office and any official capacity claims against Gillson. They also maintain that the District Attorney's Office and Gillson in his official capacity are not "persons" within the meaning of Section 1983 and therefore may not be sued under this statute. State Defendants further argue that Luginbuhl failed to state a Section 1983 false arrest claim against Gillson, that Gillson is entitled to absolute prosecutorial immunity or, in the alternative, that Gillson is protected by qualified immunity. Based on a review of the briefing, the record, and applicable law, the Court grants the Motion for Summary Judgment and dismiss the Section 1983 false arrest and malicious prosecution claims with prejudice.

State Defendants also filed a Motion to File Supplemental Brief on February 24, 2014. (Doc. 118). Luginbuhl filed a response on March 10, 2014, (Doc. 121), and State Defendants filed a reply on March 12, 2014, (Doc. 122). As explained herein, the Court denies the motion as moot.

*A. Factual & Procedural Background*

The Court construes the factual record and reasonable inferences therefrom in the light most favorable to Luginbuhl. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The Court discusses allegations pertinent to the instant Motion as well as those necessary to establish the broader context surrounding Luginbuhl's arrest.

During the times relevant to this case, Luginbuhl was a sworn law enforcement officer for the Gallup Police Department ("GPD"). Aside from the State Defendants, the other Defendants in this case include the City of Gallup; Robert H. Cron, Jr., Chief of the GPD; John Stew Allen, Deputy Chief of the GPD; and Roseanne Morrissette, a sworn law enforcement officer for GPD (collectively, "City Defendants").

On May 17, 2011, Luginbuhl, who was off duty, and Kristin Sanderson, then an Assistant District Attorney for the Eleventh Judicial District Attorney's Office, Division II, and Luginbuhl's girlfriend, got into an argument over the lunch hour. Some of the argument occurred while Sanderson was driving in her car with Luginbuhl to and from a Pizza Hut restaurant. The argument dealt with Luginbuhl's concerns about Sanderson's drinking. Sanderson testified that Luginbuhl repeatedly called her a "drunk" and yelled at her.

Sanderson became "really upset." (Doc. 94) at 3. During the argument, Luginbuhl had a knife in his possession, which he continued to hold after getting out of Sanderson's car. She locked the car door after Luginbuhl exited the car and decided to drive back to work. However, Luginbuhl stood about two feet in front of the car, knocked on the car window, and yelled at Sanderson to get out of the car. Luginbuhl grabbed onto the left rear door handle, which broke away as Sanderson drove off, causing the door handle to break off the vehicle and Luginbuhl to fall to the ground.

Sanderson and Luginbuhl had a series of telephone conversations later that afternoon. Luginbuhl was agitated, yelling at her during these conversations. (*Id.*) at 5. Luginbuhl stated that he would only return Sanderson's house key if she met him in person, which Sanderson did not want to do.

That afternoon, James Bierly saw Sanderson "really profusely crying" in her office. (*Id.*) at 4. She told him about the argument and Luginbuhl's refusal to return her house key. Shortly thereafter, Bierly listened in on a phone conversation between Sanderson and Luginbuhl. Bierly heard Luginbuhl tell Sanderson that "she was going to have to come find her [house] key in the yard." (*Id.*) In Bierly's presence, Sanderson stated something to the effect that she did not want to end up dead.

Bierly then informed Richard Malone, a District Attorney's Office investigator, that Sanderson was the victim of a domestic violence incident with Luginbuhl.[1] Bierly, Malone, and Sanderson subsequently went to Gillson's office. According to Malone, Sanderson explained to those present in Gillson's office what happened over the lunch hour as follows:

> [D]uring the lunch hour as she and Officer Luginbuhl were driving to Pizza Hut he began calling her a "drunk" over and over. He said that others were also saying the same thing. By the time they arrived at Pizza Hut she was in tears and did not want to eat. She turned her vehicle around and started home. While they were driving, Officer Luginbuhl pulled the keys from the ignition. She got the keys back and restarted the vehicle. She returned to her house on Burke Drive. When they arrived, he took her key ring and removed her house key. He gave the key ring back to her and she started to leave. He threw himself in front of the vehicle on Burke Drive and then began banging on the window while telling her to open the door. As she drove away, he was hanging onto the rear door handle. It broke off when she turned the corner.
>
> Ms. Sanderson said that she did not want to file a restraining order against Mr. Luginbuhl because she did not want him to get in trouble and lose his livelihood. At first she said she was not afraid of him but later said that she told him in a telephone conversation that she was not going back to the house because she might end up dead. She said that she was afraid he might come in the house when she was not there and that she did not know what he would do. Ms. Sanderson indicated the last thing he said was that he was going to take his stuff and lock the keys inside her house. She did not know if he would really leave as he said.

(Doc. 94) Ex. 3 (Malone Report) at 1-2.

---

[1] Luginbuhl objects to the information contained in this paragraph and the next on the basis that "Defendants have filed for a stay of discovery in this matter to prevent Mr. Malone from being deposed yet attempt to offer Mr. Malone's hearsay statements, which are not competent evidence, in support of a Motion for Summary Judgment." (Doc. 105) at 3. A district court may stay discovery upon the filing of a motion to dismiss because "qualified immunity protects against the burdens of discovery as well as trial." *Stonecipher v. Valles*, 759 F.3d 1134, 1148 (10th Cir. 2014). State Defendants' motion for a stay of discovery was fully within their procedural rights and in accordance with the purpose of qualified immunity. State Defendants correctly point out that where statements are offered not for their truth, but rather for their effect on the listener, the statements are not hearsay. *Jones v. McHugh*, 604 F. App'x 669, 672 (10th Cir. 2015) (unpublished) (citing *United States v. Smalls*, 605 F.3d 765, 785 n.18 (10th Cir. 2010)).

Malone arranged with Morrissette for a police escort from the District Attorney's Office to Sanderson's home, though Sanderson stated an escort was not necessary. Morrissette and another officer escorted Sanderson home at approximately 5:30 p.m. that day. Malone followed the group to Sanderson's home. Upon arrival at her home, Sanderson parked in the garage. She noticed that the garage door would not lock, although it locked normally that morning. Malone determined that the locking paddles were bent backward to preclude latching and the chain was shortened. Malone fixed the garage door and left the scene.

While the officers were at her home, Sanderson told Morrissette that her satellite dish was not working properly and she believed that Luginbuhl had rendered it inoperable. Sanderson explained to Morrissette what happened that afternoon. While the officers were still at the home, Luginbuhl walked by. Morrissette asked Luginbuhl what he was doing. Luginbuhl stated that he was going to see a friend. Morrissette instructed Luginbuhl to stop and then asked him about what occurred that afternoon.

Luginbuhl was armed with a knife and his department-issued gun, which he handed over to the officers. With Luginbuhl still at the scene, Morrissette contacted her supervisor, Sergeant Benny Gaona. Morrissette was reluctant to return Luginbuhl's firearm to him out of concern for Sanderson's safety. Morrissette and Gaona continued investigating, contacting Bierly and Gillson and learning that Sanderson had provided them with the same information she had reported to Morrissette. Further, the officers learned that Bierly witnessed Sanderson say to Luginbuhl that she did not want to meet him at the house to retrieve her key because she did not want to "end up dead." Sanderson admitted to Gillson that she had made this statement, though she later provided a written statement that she had not been in fear of imminent battery. After

three hours of investigation, Gaona ordered Luginbuhl's arrest. Neither Gillson nor Bierly were at the scene of the arrest, but Gillson, who lived nearby, drove past Sanderson's house.

Morrissette signed a criminal complaint charging Luginbuhl with felony extortion and the misdemeanors of attempted false imprisonment, assault against a household member, criminal damage to property, and criminal trespass. Bierly prepared the complaint, including Gillson's instruction to include a felony extortion charge. The criminal complaint was filed on May 18, 2011. Bierly also assisted with the statement of probable cause. That same morning, Luginbuhl was arraigned and released on a $5,000 bond.[2]

On or about June 7, 2011, the case was transferred to the Eleventh Judicial District Attorney's Office, Division I (Farmington). The prosecutor dismissed the extortion charge without prejudice on or about June 11, 2011. On or about November 14, 2011, the remainder of the case was dismissed without prejudice by way of a *nolle prosequi* after Sanderson stated that she would not testify at trial.

*B. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and

---

[2] Bierly includes in his Statement of Undisputed Facts information that James Bierly reported on May 26, 2011, to an investigator performing an internal affairs investigation into the events of May 17, 2011. (Doc. 94) at 8. Luginbuhl disputes these facts on the grounds that "the assertions are merely that Mr. Bierly made these statements to an internal affairs investigator nine days after the event in question, but are unsworn statements which are not competent to prove the matters asserted." (Doc. 105) at 3. Assuming that Luginbuhl is attempting to make a hearsay argument, the Court need not address the objection because the statements to the investigator repeat information already included as undisputed facts. One exception to these cumulative representations is Bierly's perceptions of Luginbuhl's demeanor during the telephone call with Sanderson. However, these facts are not relevant to the present Motion for Summary Judgment because the report does not state that Bierly communicated these impressions to anyone prior to the arrest.

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[3] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics*, 912 F.2d at 1241. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id.* At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

"In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164

---

[3]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

(10th Cir. 2011). The plaintiff, however, "is not required to show that the very conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004). Once the Court concludes that a right was "clearly established," then it becomes the "defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted). "[T]he court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Whether a defendant's conduct is objectively reasonable is a legal question, but a factual question may arise when there is a dispute regarding the historical facts material to the objectively reasonable issue. *Roska*, 328 F.3d at 1251.

> Furthermore, the Tenth Circuit Court of Appeals instructs that
>
> [i]f the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity. If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist and that the defendant "is entitled to judgment as a matter of law." In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

*C. Discussion*

   *1. "Person" and Eleventh Amendment Defenses*

Luginbuhl concedes that state agencies and officials sued in their official capacities are not persons under Section 1983 and are also protected from suit by the Eleventh Amendment. (Doc. 105) at 7. The Court addresses State Defendants' Section 1983 person argument first. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780-81 (2000) (dealing with "person" argument under the False Claims Act prior to Eleventh Amendment); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (holding that sequence in *Vermont Agency* extends to Section 1983 suits).

The Supreme Court has held that States, arms of the State, and officials sued in their official capacities for damages are not "persons" for purposes of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). A plaintiff may, however, sue officials in their official capacity for prospective relief, *id.* at 71 n.10, or officials in their individual capacity, *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

The Eleventh Judicial District Attorney's Office, Division II, is an arm of the State. Therefore, it is not a "person" under Section 1983. As a result, the Court dismisses with prejudice the Section 1983 false arrest and malicious prosecution claims against the District Attorney's Office. To the extent the Section 1983 claims are brought against Gillson in his official capacity,[4] the Court also dismisses with prejudice these claims because he is not a person under Section 1983 in his official capacity. Moreover, Luginbuhl did not sue Gillson for prospective relief. The Court does not reach State Defendants' Eleventh Amendment arguments.

---

[4] Luginbuhl did not specify in the Complaint whether he was suing Gillson in his official or individual capacity.

*2. False Arrest Claim Against Gillson in his Individual Capacity*

State Defendants argue that Luginbuhl has failed to state a plausible false arrest claim against Gillson because there is no allegation in the Complaint that Gillson had anything to do with Luginbuhl's arrest. State Defendants also argue there is no admissible evidence that Gillson decided to or did arrest Luginbuhl. State Defendants point out that Gillson, who lived near Sanderson, was not present at the scene of the arrest, though he did drive by.

While State Defendants' motion uses Fed. R. Civ. P. 12(b)(6) language and case law in support of dismissing the false arrest claim against Gillson, the Court examines the claim in the context of the Rule 56 summary judgment standard. The Court does so because State Defendants' argument appears in a motion for summary judgment and State Defendants make reference to the evidentiary record and the purported lack of admissible evidence to support a false arrest claim against Gillson.

The Tenth Circuit looks to the common law as a starting point to define false arrest for purposes of Section 1983. *Pierce v. Gilchrist*, 359 F.3d 1279, 1287-89 (10th Cir. 2004). Nonetheless, the Tenth Circuit has "considered the state law formulation" for false arrest. *McCormick v. Farrar*, 147 F. App'x 716, 721 (10th Cir. 2005) (unpublished) (citations omitted). In New Mexico, "[f]alse arrest or unlawful detention occurs when the facts available to [a] detaining officer would [not] warrant [a] person of reasonable caution to believe detention appropriate." *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (internal quotation omitted). "A defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for . . . false arrest." *Id.* (citations omitted). "[A] good faith belief in the lawfulness of the action ordinarily requires probable cause to arrest." *Id.* 1208 (citation omitted). Yet, "the ultimate question is always whether the plaintiff has alleged a

constitutional violation." *Pierce*, 359 F.3d at 1289.

Luginbuhl testified in his deposition that Gillson twice drove by the scene of the arrest, but that he lived up the street from Sanderson. (Doc. 94) Ex. 1 at 267: 19-25. Sanderson testified in her deposition that Gillson was adamant that she receive an escort home. (*Id.*) Ex. 2 at 47:23-25–48:1-16. Morrissette testified in her deposition that she talked with Gillson and Gaona spoke with Bierly to investigate prior to the arrest. (Doc. 105) Ex. 2 at 47:4-19. Morrissette also testified, however, that the decision to arrest was "mutual between [her] and [Sergeant Gaona]." (*Id.*) Ex. 2 at 48:9-14. There is no evidence that Gillson did anything more than advise Bierly to include a charge for felony extortion. (Doc. 94) ¶ 33; (Doc. 105) at 3. This uncontested evidence demonstrates that Gillson was neither a detaining officer nor did he orchestrate Luginbuhl's arrest.

Luginbuhl's allegations about Gillson participating in a meeting at the District Attorney's Office, ordering an escort for Sanderson, and driving by Sanderson's home—near his own—are not proximate causes of the arrest. Further, while Morrissette spoke with Gillson prior to the arrest, there are no allegations or evidence as to what Gillson said to her. It is clear from Morrissette's deposition that she and Gaona made the decision to arrest, not Gillson. Hence, no reasonable jury could find Gillson liable for false arrest. The Court thus finds that Gillson is entitled to summary judgment on the Section 1983 false arrest claim, and the claim will be dismissed with prejudice. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 934 (10th Cir. 2008) ("Because no reasonable jury could find a[] [False Claims Act] violation, we need not decide whether qualified immunity functions as a defense.").

*3. Malicious Prosecution—Absolute Prosecutorial Immunity*

Absolute prosecutorial immunity applies to prosecutors whose "activities were intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). That is, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* (citation omitted).

State Defendants argue that Gillson is entitled to absolute prosecutorial immunity as to the remaining Section 1983 malicious prosecution claim. The Tenth Circuit has articulated the elements of Section 1983 malicious prosecution as follows:

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (citation omitted).

Luginbuhl counters that Gillson is not entitled to absolute prosecutorial immunity because Gillson "crossed the line from prosecutor to both investigator and witness." (Doc. 105) at 9. That is, Gillson allegedly "supplied the facts, then supplied the charges . . . as dual function of prosecutor and witness." Luginbuhl cites *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997), for the proposition that "a prosecutor who becomes a witness to the case enjoys no immunity for their actions as witness" (Doc. 105) at 8. State Defendants argue that absolute prosecutorial immunity covers conduct such as whether to prosecute and what charges to bring and that there

is no evidence Gillson conducted an investigation. They also state that *Kalina* does not support Luginbuhl's argument because *Kalina* involved a prosecutor acting as a "complaining witness" by signing a probable cause statement. State Defendants point out that Morrissette—not Gillson—signed the probable cause statement and criminal complaint. That is, State Defendants argue, *Kalina* does not "hold that a prosecutor loses absolute immunity by responding to pre-arrest requests from law enforcement officers for information relevant to the officers' investigation." (Doc. 110) at 12.

The undisputed material facts show that Gillson's involvement in the case prior to Luginbuhl's arrest consisted of learning about the lunchtime altercation, ordering an escort for Sanderson, twice driving by the scene of the arrest, and answering a call from Morrissette seeking facts in furtherance of her criminal investigation. The Court finds that these actions were not "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, and therefore are not entitled to absolute prosecutorial immunity. However, no reasonable jury could find that such actions caused Luginbuhl's "continued confinement or prosecution." *Novitsky*, 491 F.3d at 1258. Further, the Court agrees with State Defendants that Gillson's role as a witness relaying information about the lunchtime altercation to Morrissette was that of an ordinary witness, not a "complaining witness" as described in *Kalina*, 522 U.S. at 129-31. Nor is there any evidence that Gillson conducted an investigation.

Therefore, the Court moves on to the remaining action Gillson took with regard to this case—instructing Bierly to include felony extortion in the criminal complaint to be signed by Morrissette. This instruction lies clearly within the boundaries of absolute prosecutorial immunity because it is an act "undertaken by a prosecutor in preparing for the initiation of judicial proceedings." *Buckley*, 509 U.S. at 273. Absolute immunity applies to a prosecutor who

13

prepares and files charging documents, so long as he or she did not personally attest to the truth of the statements therein. *Kalina*, 522 U.S. at 129. Accordingly, this Court finds that Gillson is entitled to absolute prosecutorial immunity for his instruction to include a felony extortion charge in the criminal complaint. Based on the foregoing, Gillson is entitled to summary judgment as to the Section 1983 malicious prosecution claim, and the Court will dismiss the claim with prejudice.

*4. Motion for Leave to File Supplemental Brief*

State Defendants seek leave to file a supplemental brief in support of (1) Motion to Dismiss Claims Against James E. Bierly (Doc. 81), and (2) State Defendants' Motion for Summary Judgment on Grounds of Absolute and Qualified Immunity (Doc. 94). On January 16, 2014, the City Defendants filed a Motion for Summary Judgment. (Doc. 116). Luginbuhl filed a response to the City Defendants' Motion for Summary Judgment on February 18, 2014, in which he made new factual statements dealing with Defendants' involvement in the decision to arrest Luginbuhl that are allegedly detrimental to Luginbuhl's Section 1983 false arrest claim. (Doc. 117).

Having already determined to dismiss the Section 1983 false arrest claims against State Defendants, the Court will deny the Motion for Leave to File Supplemental Brief as moot.

IT IS ORDERED that

1) State Defendants' Motion for Summary Judgment (Doc. 94) is granted;
2) the Court will dismiss with prejudice Luginbuhl's Section 1983 false arrest and malicious prosecution claims against the District Attorney's Office and Gillson; and
3) the District Attorney's Office and Gillson will be terminated as Defendants in this case.

_____
UNITED STATES DISTRICT JUDGE