IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID LUGINBUHL,

       Plaintiff,

vs.                                                                        No. 1:12-CV-01199 KG/SMV

CITY OF GALLUP; ROBERT H. CRON, JR.;
JOHN STEW ALLEN; ROSANNE MORRISSETTE;
and JOHN DOES 1-5,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       This matter is before the Court on City Defendants' Motion for Summary Judgment filed on January 16, 2014. (Doc. 116.) "City Defendants" include the City of Gallup; Robert H. Cron, Jr., Chief of the Gallup Police Department ("GPD"); John Stew Allen, Deputy Chief of the GPD; and Rosanne Morrissette, a sworn law enforcement officer of GPD. Plaintiff David Luginbuhl filed a response on February 18, 2014, (Doc. 117), and City Defendants filed a reply on March 3, 2014, (Doc. 119). Luginbuhl's claims against City Defendants include the following: Section 1983 claims for false arrest and malicious prosecution; New Mexico Tort Claims Act ("NMTCA") claims for false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, and defamation of character; and New Mexico Human Rights Act ("NMHRA") claims for retaliation. City Defendants argue that they are entitled to summary judgment on the Section 1983 claims based on Morrissette's qualified immunity, as well as on other grounds. City Defendants also make various arguments against the state law claims. Based on a review of the briefing, the record, and applicable law, the Court grants the Motion for

Summary Judgment and dismisses the Section 1983 false arrest and malicious prosecution claims with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state claims and dismisses them without prejudice.

*A. Factual & Procedural Background*

The Court construes the factual record and reasonable inferences therefrom in a light most favorable to Luginbuhl. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The Court discusses only those facts pertinent to the present Motion for Summary Judgment. Previously dismissed Defendants include the Eleventh Judicial District Attorney's Office, Division II; Karl R. Gillson, District Attorney for the Eleventh Judicial District Attorney's Office, Division II; and Glenn Bierly, as personal representative of the Estate of James E. Bierly, former Chief Deputy District Attorney for the Eleventh Judicial District Attorney's Office, Division II (collectively, "State Defendants"). The Court discusses State Defendants to the extent necessary to set the background.

During the times relevant to this case, Luginbuhl was a sworn law enforcement officer for GPD. Luginbuhl was in a personal relationship with then Assistant District Attorney Kristin Sanderson prior to May 17, 2011. However, the two got into an argument over the lunch hour on May 17, 2011. While Sanderson was driving her vehicle and Luginbuhl riding as a passenger, Luginbuhl removed the car keys from the ignition. Upon receiving the keys back from Luginbuhl, Sanderson continued driving the pair to her home. Once they arrived at Sanderson's home, Luginbuhl again removed the keys from the ignition while Sanderson was in the driver's seat. This time, he took Sanderson's house key off of the key ring with the car key, returned the car key, and kept the house key without Sanderson's permission. Luginbuhl got out of the vehicle, but he stood in front of the vehicle for about two seconds as Sanderson started to drive

away because he wanted to continue talking. Luginbuhl grabbed the vehicle door handle, which broke away from Sanderson's vehicle as she drove away, causing Luginbuhl to fall to the ground.

Sanderson returned to work, appearing in court for one to two hours after lunch. When Sanderson returned to the District Attorney's Office later that afternoon, she cried profusely in her office. She informed James Bierly that she had been in a fight with Luginbuhl, that he had taken her house key and would not return it, and that he had broken the door handle off her vehicle. Throughout the afternoon, Luginbuhl communicated to Sanderson that he would not return her house key unless she met him in person. Sanderson refused to do so because she was afraid of what might happen. Luginbuhl was aware that Sanderson wanted him out of her house. In Bierly's presence, Sanderson stated something to the effect that she did not want to end up dead.

Later that day, Morrissette was called to the District Attorney's Office to escort Sanderson home. Richard Malone, an investigator for the District Attorney's Office, advised Morrissette that Sanderson and Luginbuhl had an argument over the lunch hour, that she had been crying in her office and did not feel safe returning home, that she made statements that she did not want to end up dead, and that Luginbuhl had refused to leave her residence. Upon arriving at Sanderson's home with Sanderson, Morrissette noticed Sanderson's car door handle had been broken off and that Sanderson's garage door appeared to have been tampered with. Morrissette also learned other details about what had happened over the lunch hour. At that point, Morrissette decided to turn the call for an escort into a criminal investigation.

While Morrissette was at Sanderson's home, Luginbuhl returned to the residence wearing a hooded jacket with the hood raised and dark sunglasses. Morrissette stopped Luginbuhl to ask

him about the incident over the lunch hour. Luginbuhl was carrying a firearm under his jacket and a knife in his front pocket, both of which he allowed the officers to take from him. Luginbuhl stated he and Sanderson had been in an argument and admitted he accidentally broke a door handle from Sanderson's vehicle.

Morrissette's supervisor, Sergeant Benny Gaona, soon arrived at Sanderson's home. Gaona learned from Morrissette that Luginbuhl took Sanderson's keys, broke a vehicle door handle, stood in front of Sanderson's vehicle to persuade her not to leave, and tampered with her garage door. He also learned that Sanderson told Luginbuhl to leave her home. As a result, Gaona requested a written statement from Sanderson, but she was uncooperative and annoyed that the officers had been at her house for hours. Sanderson instead agreed to write only a one-line statement that she "did not feel in fear of imminent battery." (Doc. 116) Ex. E at 15:23-25. Gaona concluded from speaking with Sanderson that she was emotionally upset. He noted her tone of voice, body language, and means of presenting herself.

Gaona then spoke with Bierly on the telephone, initially telling Bierly that he was not sure there was a sufficient basis to arrest Luginbuhl. Morrissette told Sanderson there was insufficient evidence to charge Luginbuhl and more investigation was needed before effecting the arrest. Bierly confirmed that Sanderson made a statement that she did not want to end up dead.

Morrissette did not release Luginbuhl or return his firearm to him, believing he was dangerous and unstable. Morrissette previously informed supervisors at GPD sometime prior to this incident that she believed Luginbuhl was unstable. On October 26, 2010, Cron ordered Luginbuhl to undergo a mental health assessment, upon which he was found not to be a danger to himself or otherwise unstable.

4

Morrissette arrested Luginbuhl for trespassing, criminal damage to property, and assault on a household member based in part on Sanderson's statement that she did not want to end up dead.[1] (*Id.*) Ex. C at 48:16-21.

After consulting with Bierly, Morrissette filed the criminal complaint on May 18, 2011, charging Luginbuhl with felony extortion and the misdemeanors of attempted false imprisonment, assault against a household member, criminal damage to property, and criminal trespass. That same day, a magistrate judge found probable cause to support the charges.

When later questioned, Morrissette told an internal affairs investigator that "[t]his isn't the first go around with Officer Luginbuhl with regards to him being unstable or an unfit officer, but I'm hoping this is the final one" and further testified that she "didn't want [Luginbuhl] to be an officer because he needed to learn his lesson." (Doc. 17) Ex. 4 at 98:19-99:2. As a result, Luginbuhl was terminated from GPD on June 8, 2011.

On July 11, 2011, the assigned prosecutor dismissed the felony extortion charge. On November 8, 2011, Sanderson informed the prosecutor that she would not appear at trial. Her failure to appear was based primarily on financial hardship for her to travel to Gallup from Rio Rancho, where she had moved for a new job and then lost that job. Sanderson stated Luginbuhl should not have been arrested at all, calling the event only a "heated argument." (Doc. 117) Ex. 1 at 170:19-20. The prosecutor did not accommodate Sanderson's travel to Gallup. The prosecutor prepared to go to trial on the charges of trespass, criminal damage to property, and attempted false imprisonment. However, after a judge denied a Motion for Order to Show Cause to force Sanderson to testify, the prosecutor filed a *nolle prosequi* as to all remaining charges on

---

[1] Luginbuhl disputes this fact to the extent that Gaona only testified at his deposition that the arrest was based on assault on a household member and property damage. He does not dispute, however, a separate statement of material fact stating that he was "arrested for trespass based on his returning to Sanderson's residence." (Doc. 116) at 6 ¶¶ 20-21; (Doc. 117) at 3.

5

November 14, 2011, based on Sanderson's failure to appear. The prosecutor later testified that, had the case proceeded to trial, he likely would have dismissed the assault on a household member charge "to maintain credibility with the court." (*Id.*) Ex. 7 at 29:12-25.

Allen reviewed an Internal Affairs case file for this matter. He did not take issue with the manner in which the case was investigated, concluding the investigation conformed with GPD policies and procedures except for a failure to record certain interviews and a failure to properly search Luginbuhl after his arrest.

The Court does not discuss the factual background surrounding the NMTCA claims not relevant to the Section 1983 claims and the NMHRA retaliation claims against City Defendants because the Court declines to exercise supplemental jurisdiction over these claims.

*B. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[2] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics*, 912 F.2d at 1241. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).

---

[2] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

"In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The plaintiff, however, "is not required to show that the very conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004). Once the Court concludes that a right was "clearly established," then it becomes the "defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted). "[T]he court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)

7

(quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Whether a defendant's conduct is objectively reasonable is a legal question, but a factual question may arise when there is a dispute regarding the historical facts material to the objectively reasonable issue. *Roska*, 328 F.3d at 1251.

Furthermore, the Tenth Circuit Court of Appeals instructs that

> [i]f the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity. If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist and that the defendant "is entitled to judgment as a matter of law." In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

*C. Discussion*

*1. Section 1983 False Arrest and Malicious Prosecution Claims*

The Tenth Circuit looks to the common law as a "starting point" to define false arrest and malicious prosecution for purposes of Section 1983. *Pierce v. Gilchrist*, 359 F.3d 1279, 1287-89 (10th Cir. 2004). The term "common law" refers to "general principles of common law among the several states." *Id.* at 1288. Nonetheless, the Tenth Circuit has "considered the state law formulation" for false arrest and malicious prosecution. *McCormick v. Farrar,* 147 F. App'x 716, 721 (10th Cir. 2005) (unpublished) (citations omitted).

The Tenth Circuit noted that in New Mexico, "[f]alse arrest or unlawful detention occurs when the facts available to [a] detaining officer would [not] warrant [a] person of reasonable caution to believe detention appropriate." *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (internal quotation omitted). "A defendant possessed of a good faith

8

and reasonable belief in the lawfulness of the action is not liable for . . . false arrest." *Id.* (citations omitted). "[A] good faith belief in the lawfulness of the action ordinarily requires probable cause to arrest." *Id.* at 1208 (citation omitted). Yet, "the ultimate question is always whether the plaintiff has alleged a constitutional violation." *Pierce*, 359 F.3d at 1289.

The Tenth Circuit requires the following elements for purposes of establishing a Section 1983 malicious prosecution claim:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (citing *Pierce*, 359 F.3d at 1291-97).

City Defendants note that although not specifically stated in the Complaint, Luginbuhl "is likely presenting the false arrest claim as an arrest without probable cause in violation of the Fourth Amendment." (Doc. 116) at 10. City Defendants also agree that a malicious prosecution claim requires a lack of probable cause to support the original arrest as an element. They argue that the Court should dismiss Luginbuhl's Section 1983 false arrest and malicious prosecution claims because his arrest and the charges filed against him were supported by probable cause.

City Defendants further argue that Morrissette had probable cause to arrest for trespass when Luginbuhl returned to the residence despite knowing Sanderson did not want him there. City Defendants also contend that there was probable cause to arrest for assault on a household member and criminal damage to property under the Family Domestic Violence Act exception to the misdemeanor arrest presence requirement in New Mexico. NMSA 1978, § 40-13-7(B)(5)(Cum. Supp. 2013). City Defendants argue that Sanderson's description of Luginbuhl standing in front of her vehicle provided probable cause for false imprisonment. Finally, City

9

Defendants maintain probable cause for the extortion charge based on Luginbuhl's reported refusal to return Sanderson's house key unless she agreed to meet with him in person. Therefore, City Defendants argue, probable cause for Luginbuhl's arrest negates the elements of Section 1983 false arrest and malicious prosecution, and they are entitled to summary judgment as to these claims. City Defendants also argue that, even if there was not probable cause, Morrissette is entitled to qualified immunity because a reasonable officer would have believed that probable caused existed to make the warrantless arrest.

Luginbuhl contends the "facts do not demonstrate probable cause as to every element of each charged offense, and were therefore insufficient as a matter of law to establish probable cause to arrest or charge Mr. Luginbuhl," referencing the New Mexico Uniform Jury Instructions. (Doc. 117) at 7-13. He argues there was no probable cause to arrest him for trespass because he did not re-enter the house, although he does not dispute, that Sanderson wanted him out of her house. Luginbuhl also contends that because Gaona did not specifically identify trespass as a reason for Luginbuhl's arrest—although Morrissette did identify this reason—there is an issue of fact regarding the initial justification for his arrest. Finally, Luginbuhl argues that had Morrissette witnessed a trespass, a misdemeanor, she would not have needed further discussion or investigation.

Luginbuhl argues there was no probable cause for assault against a household member because Sanderson explicitly stated she did not feel in fear of imminent battery. Luginbuhl also argues there was no probable cause for the criminal damage to property charge because this crime requires intentional damage, and Luginbuhl had told Morrissette that the broken door handle resulted from an accident. Luginbuhl contends there was no probable cause for the extortion charge because he did not make any of the enumerated threats, which are a required

10

element of the offense. Finally, Luginbuhl argues there was no probable cause for the false imprisonment charge, arguing he stepped in front of the vehicle merely to continue talking and he voluntarily stepped away after only two seconds.

Luginbuhl further argues that Morrissette specifically is not entitled to qualified immunity because the right to be free from false arrest and malicious prosecution was clearly established at the time of the incident. Luginbuhl contends a reasonable officer acting without bias or personal motive would not have made the arrest. Luginbuhl also argues Morrissette wrongly failed to provide Gaona with Sanderson's statement that she did not feel in fear of imminent battery, and this failure constituted a Fourth Amendment violation for "knowingly or recklessly omit[ting] from the affidavit information which, if included, would have vitiated probable cause." (Doc. 117) at 15 (citing *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)).

City Defendants reply that jury instructions do not define probable cause. City Defendants point out that Luginbuhl referenced the elements of the wrong jury instruction, which include similar—but not the same—elements of the offense of assault against a household member. City Defendants also argue that Sanderson's statement to Gaona was but one of many facts for police to consider before making the arrest. They note that Sanderson was also visibly upset when she spoke to Gaona and that earlier that day, she had been crying in her office, was reluctant to go home, and stated that she did not want to end up dead. With regard to criminal damage to property, City Defendants contend that Luginbuhl's "self-serving statement" that breaking off Sanderson's door handle was accidental is not the end of the inquiry. Rather, City Defendants argue a reasonably objective officer aware that Luginbuhl broke the handle by hanging onto it as Sanderson tried to drive away could conclude that criminal damage to property occurred. City Defendants also emphasize the fact that Luginbuhl did not re-enter

11

Sanderson's home is irrelevant to the trespass charge. City Defendants maintain the trespass statute under which Luginbuhl was charged deals with a defendant "knowingly enter[ing] or remain[ing] upon the un-posted lands . . . knowing that such consent to enter or remain was denied or withdrawn." NMSA 1978, § 30-14-1(B) (Repl. Pamp. 2004). City Defendants also suggest Luginbuhl did make a threat when he refused to return Sanderson's house key thus giving rise to an extortion charge. Finally, City Defendants contend it is best left to the New Mexico Legislature to say whether a restraint of two seconds can constitute attempted false imprisonment.

It is well established that arrests must be supported by probable cause. *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quotation omitted). The existence of probable cause is based on the totality of the circumstances. *Id.* "Probable cause to arrest does not require facts sufficient to establish guilt, but does require more than mere suspicion." *Vazquez-Pulido*, 155 F.3d at 1216 (citation omitted). The subjective intent of the officer in making the arrest does not invalidate an arrest that is otherwise legitimate given the presence of probable cause. *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)). That is, the determination of whether probable cause existed is an objective standard. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). "All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest [the defendant] on *some* ground." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289

(10th Cir. 2006)). An officer must have "had reason to believe that a crime—any crime—occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The Court concludes there was probable cause to arrest Luginbuhl for trespass based on his reentry to Sanderson's property despite his knowing that Sanderson did not want him there. Morrissette received information from Malone that Luginbuhl had refused to leave Sanderson's residence earlier in the afternoon, and Sanderson did not feel safe going home. It is no matter that Luginbuhl never reentered the home itself. New Mexico's criminal trespass statute merely discusses entering the lands of another knowing that consent to enter was denied or withdrawn by the owner or occupant. NMSA 1978, § 30-14-1(B) (Repl. Pamp. 2004). Further, despite Gaona's failure to list trespass as an initial reason for Luginbuhl's arrest and the delay in executing the arrest, the officers nevertheless were aware of objective evidence sufficient for probable cause to make an arrest for trespass. *Fogarty*, 523 F.3d at 1156; *Apodaca*, 443 F.3d at 1289. It was reasonable for Morrissette to believe in this instance that probable cause existed to arrest Luginbuhl for trespass. *See Hunter*, 502 U.S. at 227. Luginbuhl has failed to show that a reasonable jury could find Morrissette violated his federal constitutional right. *Estate of Booker*, 745 F.3d at 411. The Court need not discuss whether probable cause existed to arrest Luginbuhl for the other crimes with which he was charged. Morrissette is entitled to qualified immunity with respect to the Section 1983 false arrest and malicious prosecution claims, and these claims are dismissed against her with prejudice.

Due to the presence of probable cause for Luginbuhl's arrest, no Section 1983 false arrest or malicious prosecution claims remain against Cron or Allen. Nor may the City of Gallup be

found liable where its officials have not been shown to violate a constitutional right. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Therefore, the Court also dismisses the Section 1983 false arrest and malicious prosecution claims against Cron, Allen, and the City of Gallup with prejudice.

   *2. State Claims*

In light of the foregoing, only Luginbuhl's NMTCA and NMHRA claims remain. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1293 (10th Cir. 2008). Under 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [supplemental] jurisdiction. . . ." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the interests of judicial economy, convenience, fairness, and comity would not be served by retaining supplemental jurisdiction over the state claims. *Id.* Taking into consideration those factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over Luginbuhl's NMTCA and NMHRA claims. Consequently, this Court will dismiss the NMTCA and NMHRA claims without prejudice so Luginbuhl may pursue these claims in state court.

   IT IS ORDERED that

   1) City Defendants' Motion for Summary Judgment (Doc. 116) is granted with respect to Luginbuhl's Section 1983 false arrest and malicious prosecution claims;

2) the Section 1983 false arrest and malicious prosecution claims will be dismissed with prejudice;

3) the Court declines to exercise supplemental jurisdiction over the state NMTCA and NMHRA claims; and

4) the NMTCA and NMHRA claims will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE